**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **VIRTUAL CREATIVE ARTISTS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**MOVE, INC.,**<br><br>Defendant. | C.A. No. 6:25-cv-0004<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Virtual Creative Artists, LLC files this Original Complaint for Patent Infringement against Move, Inc. and would respectfully show the Court as follows:

### I.  THE PARTIES

1.      Plaintiff Virtual Creative Artists, LLC ("VCA" or "Plaintiff") is a Delaware limited liability company, having business address at 338 Gracious Way, Henderson, NV  89011.

2.      On information and belief, Defendant Move, Inc. ("Move" or "Defendant") is a corporation that has a place of business at 901 E 6th St, Austin, TX 78702.

### II.  JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein at 901 E 6th St, Austin, TX 78702.

5.     Without limitation, on information and belief, within this state, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Texas.  Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Texas. Defendant has committed such purposeful acts and/or transactions in Texas such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6.     Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant has businesses in this district at 901 E 6th St, Austin, TX 78702.  On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7.      For these reasons, personal jurisdiction exists and venue is proper in this District under 28 U.S.C. § 1400(b).

### III.   COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,501,480)

8.     Plaintiff incorporates the above paragraphs herein by reference.

9.     On November 22, 2016, United States Patent No. 9,501,480 ("the '480 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '480 Patent is titled "Revenue-Generating Electronic Multi-Media Exchange and Process of Operating Same." A true and correct copy of the '480 Patent is attached hereto as Exhibit A and incorporated herein by reference.

10.     VCA is the assignee of all right, title, and interest in the '480 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '480 Patent.  Accordingly, VCA possesses the exclusive right and standing to prosecute the present action for infringement of the '480 Patent by Defendant.

11.     The invention relates to the field of creating and distributing media content, in particular, creating media content based upon submissions received on an electronic media exchange. At the time of the original invention in 1998, there was an Internet-centric problem that required a technical solution—how to develop a computer system that would allow remote contributors of electronic content to share and collaborate their content to develop new media content. The claimed invention, which predates modern crowdsourcing solutions, offers a unique, unconventional, and specially configured combination of "subsystems" in which to address the Internet-centric problem.

12.     As set forth in the claims, the claimed invention has a collection of unconventional and particularly configured subsystems, including:

- "an electronic media submissions server subsystem,"

- "an electronic multimedia creator server subsystem,"

- "an electronic release subsystem,"

- "an electronic voting subsystem," and

- their corresponding specialized databases.

13.     Each of these subsystems are configured in a very specific (and not generic), unconventional and non-routine manner to offer the novel and non-obvious claimed invention. For example, claim 1 requires an "electronic media submissions database," which is a subsystem that receives media submissions from Internet users.  This is not a generic database but rather a scalable database that must be able to receive, store, and manage multiple petabytes of multimedia

data received from users all over the world. This is one of the many specialized databased required in the claim. In fact, the specification discloses the use of a sophisticated database management system known in the art at the time that was capable of handling data at this level, Oracle7. This type of database management system cannot operate on a generic computing system but rather requires specialized hardware and software.

14.    As another example, the claim requires a specifically configured "electronic media submission server subsystem." This subsystem is defined as specifically having:

- "one or more data processing apparatus,"

- "an electronic media submission database stored on a non-transitory medium," and

- "a submissions electronic interface."

The "submissions electronic interface" is further specifically "configured" [1] "to receive electronic media submissions from a plurality of submitters over a public network, and [2] store the electronic media submissions in the electronic media submission database." Further, "the electronic media submissions database" in this subsystem is further required to "store[] [1] data identifying the submitter and [2] data indicating content for each electronic media submission." Collectively, the level of detail included in this very particular, well-defined, and unconventional subsystem makes clear that the claims include substantially more than the alleged abstract idea or merely performing an alleged abstract idea on a computer.

15.    Similarly, the claim also requires a separate specifically configured "an electronic multimedia creator server subsystem." The claim specifically defines how this second subsystem interacts with other components including being "operatively coupled to the electronic media submissions server subsystem." The claim also specifically defines this subsystem as "having":

- "one or more data processing apparatus" and

- "an electronic creator multimedia database stored on a non-transitory medium."

16.     This subsystem is also specifically "configured [1] to select and [2] retrieve a plurality of electronic media submissions from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server."  The "filter" also includes a very specific algorithm of "being based at least in part on at least one of the one or more user attributes to develop multimedia content to be electronically available for viewing on user devices."  Even more detail is provided by requiring "the identification of the submitter [be] maintained with each selected and retrieved submission within the multimedia content."  Here again, collectively, the level of detail included in this very particular and well-defined and unconventional subsystem makes clear that the claims include substantially more than an alleged abstract idea or merely performing an alleged abstract idea on a computer.

17.     The claim also includes "an electronic release subsystem," which is well defined and not conventional or routine.  The claim defines how this subsystem is "operatively coupled to the electronic multimedia creator server subsystem."  The claim also defines the components of this subsystem as having "one or more data processing apparatus" and being particularly "configured to make the multimedia content electronically available for viewing on one of more user devices."  These details, collectively, also make this very particular and well-defined and unconventional subsystem substantially more than an abstract idea or performing an abstract idea on a computer.

18.     The claim also requires "an electronic voting subsystem," which is well-defined, specific, and unconventional.  This claimed subsystem has "one or more data processing apparatus" and is specifically "configured to enable a user to electronic vote for or electronically

rate an electronically available multimedia content or an electronic media submission within a respective electronically available multimedia content."

19.    Claim 1 is a specific and discrete implementation.  For example, the claim requires an "electronic content filter" located at the server, remote from end users, and customizable based on user attributes.  As another example, the "electronic voting subsystem" at the time of the invention was novel and inventive and added sufficient inventive contributions to avoid a risk of preempting creating and distributing media content.   It is possible to create and distribute media content without ever having to include a "voting" subsystem on what components should be included in such media content.  The detailed configuration "to enable a user to vote for or electronically rate an electronically available multimedia content or an electronic media submission within a respective electronically available multimedia content" has the level of particularity that avoids any risk of preemption.

20.    Furthermore, the very particular and specifically configured "electronic media creator subsystem" not only provides a detailed and unique physical structure and interrelationship with other claimed components, but also includes a very specific configuration that is not conventional or routine.  The claims make clear the interrelationship of the "electronic multimedia creator server subsystem" with respect to "the electronic media submission server subsystem" which must be "operatively coupled" thereto.  The claims also provide detail on how the "electronic media creator subsystem" is "configured" "to select and retrieve a plurality of electronic media submissions from the electronic media submission database using an electronic filter."  They also provide detail on how the "electronic filter" is "based at least in part on at least one of the one or more user attributes" and specifies that "the identification of the submitter is maintained with each selected and retrieved submission within the multimedia content."

21.     These arguments overcame a patent eligibility rejection under 35 U.S.C. §101 of the claim at issue during the prosecution of the '480 patent before the United States Patents and Trademark Office.

22.     **Direct Infringement.** Upon information and belief, Defendant has been directly infringing claims 1, 9, 11, and 16 of the '480 Patent in Texas, and elsewhere in the United States, by employing a computer-based system using https://www.realtor.com/ ("Accused Instrumentality") (*e.g.,* https://www.realtor.com/).

23.     Move uses a computer-based system for its Accused Instrumentality, to enable user-submitters to create public profiles (such as an Agent profile associated with a real estate agent). Individual users may also post electronic submissions in the form of real estate listings. Each of the public profiles and the real estate listings contain multimedia content including textual content and image content as well as hyperlinks to other pages internal or external to Realtor.com. The real estate listings and associated multimedia content may be shown to other users based on, *inter alia*, user attributes. Move's System employs an electronic release subsystem operatively coupled to the electronic multimedia creator server subsystem, necessarily having one or more data processing apparatus in order to serve real estate listings with associated textual content and image content to users, configured to make the multimedia content electronically available for viewing on one or more user devices. For example, as shown below, multimedia content associated with the real estate listing is provided on various user devices (*e.g.,* computers or other devices with a web browser or app) in response to a user logging in to the Accused Instrumentality. Move uses function-specific subsystems, for example as discussed below. Move, during the relevant time period, took advantage of multiple cloud server providers for the Accused Instrumentality, as discussed above, as well as scalability within its cloud server providers, employing separate server

subsystems for all its meaningfully different functions. Move uses, and has used during the relevant time period, numerous different networks and providers for, *inter alia*, content management systems, web servers, web hosting, data centers, proxy certificates, SSL certificates, traffic analysis, advertising, and tagging, thereby using separate server subsystems for all its meaningfully different functions, such as those indicated below.



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).



(*E.g.*, https://w3techs.com/sites/info/Realtor.com).

24.     The Accused Instrumentality includes an electronic media submissions server subsystem, having one or more data processing apparatus and an electronic media submissions database stored on a non-transitory medium in order to process and store received submissions from a plurality of user-submitters, for example content pertaining to their respective electronic media submission (*e.g.,* real estate listing) on the Accused Instrumentality, as well as multimedia content (*e.g.,* photo and/or textual content) to be displayed on a main page or within a real estate listing, as discussed and shown for example in connection with the above discussion. Individual users may create a profile and submit content pertaining to their user profile and/or Real estate listing. The submissions are provided to the Accused Instrumentality via a submissions electronic interface, *e.g.,* a web-based content portal such as Move's RealSuite dashboard for real estate agents, accessible for example by logging in and selecting an option to upload such content or import content, configured to receive such electronic media, from a plurality of submitters (*e.g.,* real estate agents) over a public network (*e.g.,* , the Internet) and stored, via an uploading process, in said electronic media Listings database for use in distribution to other users of the Accused Instrumentality.



(*E.g.*, https://www.youtube.com/watch?v=TCZ7oS3M-0E).



(*E.g.*, https://www.youtube.com/watch?v=Obut_hf8zm0).

      25.    The electronic media submissions database of the Accused Instrumentality used by Move which stores the submissions further stores data identifying the submitter and data indicating content for each electronic media submission (*e.g.*, a real estate listing). As shown below, data identifying the user-submitter includes, *e.g.*, a name. Data indicating content for each electronic media submission includes photo and/or textual content pertaining to the real estate listing.



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).

26.    Individual user-submitters can sign up and maintain a number of real estate listings, which are stored on a user database. Such user database is stored in memory available through the Accused Instrumentality, for example as discussed below. User attributes selected by users pertaining to the real estate listings, contained on the user database, may include *e.g.*, listing price, number of beds and bathrooms, square feet, geographical location and the like, as shown for example in the examples below.



(*E.g.,* https://www.youtube.com/watch?v=Obut_hf8zm0).

27.    The Accused Instrumentality employs an electronic multimedia creator server subsystem operatively coupled to the electronic media submissions server subsystem, necessarily having one or more data processing apparatus in order to manage content, and an electronic creator multimedia database stored on a non-transitory medium, configured to select and retrieve a plurality of electronic media submissions (*e.g.,* real estate listings with associated photo content and textual content) from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server. As can be seen below, such electronic content filter as is used by Move is based at least in part on at least one of the one or more user

attributes selected by the user (*e.g.*,  listing price, number of beds and bathrooms, square feet, geographical location, property type, listing status and the like), which in turn affect which electronic media submissions, and associated media, appear to the user, as shown and discussed for example below.



(*E.g.*, https://www.youtube.com/watch?v=XmzOldRlXm0).



(*E.g.*, https://www.youtube.com/watch?v=XmzOldRlXm0).



(*E.g.*, https://www.youtube.com/watch?v=XmzOldRlXm0).



(*E.g.,* https://www.youtube.com/watch?v=XmzOldRlXm0).

28.    Such electronic content filter is used by the Accused Instrumentality to develop multimedia content (*e.g.,* real estate listings and/or various content as discussed above) associated with the user-submitter to be electronically available for viewing on user devices (*e.g.,* devices such as computers and smart phones incorporating browsers or apps) wherein the identification of the submitter (*e.g.,* a name) is maintained with each selected and retrieved submission within the multimedia content, for example as shown below.



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).

29.    The Accused Instrumentality employs an electronic release subsystem operatively coupled to the electronic multimedia creator server subsystem, necessarily having one or more data processing apparatus in order to serve real estate listings with associated photo and textual content to users, configured to make the multimedia content electronically available for viewing on one or more user devices. Move uses function-specific subsystems, for example as discussed below.



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).



(*E.g.,* https://www.youtube.com/watch?v=JDBmQzV5ys8).

30.     The Accused Instrumentality employs an electronic voting subsystem, necessarily having one or more data processing apparatus in order to track voting or electronic rating, configured to enable a user to electronically vote for or rate an electronically available multimedia content (*e.g.,* a real estate listing), *e.g.,* by the user's choices with respect to a selection of a Heart button. Move uses function-specific subsystems, for example as discussed below.



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).



(*E.g.*, https://www.youtube.com/watch?v=Obut_hf8zm0).

      31.    The Accused Instrumentality enables the electronic content filter to include criteria identifying a media submission's categorical information. As can be shown below, the categorical information can include for example the type of property of the real estate listing, such as a Condo or a Single Family Home.



(*E.g.*, https://www.youtube.com/watch?v=XmzOldRlXm0).

32.    The Accused Instrumentality enables the electronic content filter to include criteria identifying a media submission's text. As can be shown below, the user is able to conduct a text search outside of predetermined criteria. The text search necessarily narrows the search to media submissions' text.



How To Setup An Automatic Search on Realtor.com

David Pere
40.5K subscribers        Subscribe

👍 24    👎    ➦ Share    💾 Save    ···

1,952 views  Feb 27, 2021

(*E.g.*, https://www.youtube.com/watch?v=XmzOldRlXm0).

33. The Accused Instrumentality enables the electronic content filter to include criteria identifying defined by Boolean logic. As can be shown below, the user selection of a predetermined criteria necessarily narrows the media submissions by the submissions that either match or do not match the criteria selected by the user.



**How To Setup An Automatic Search on Realtor.com**

David Pere
40.5K subscribers

1,952 views  Feb 27, 2021

(*E.g.*, https://www.youtube.com/watch?v=XmzOldRlXm0).

34.     Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '480 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

35.     To the extent marking is required, VCA has complied with all marking requirements.

## IV.  COUNT II
## (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,477,665)

36.    Plaintiff incorporates the above paragraphs herein by reference.

37.    On October 25, 2016, United States Patent No. 9,477,665 ("the '665 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '665 Patent is titled "Revenue-Generating Electronic Multi-Media Exchange and Process of Operating Same."  A true and correct copy of the '665 Patent is attached hereto as Exhibit B and incorporated herein by reference.

38.    VCA is the assignee of all right, title, and interest in the '665 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '665 Patent.  Accordingly, VCA possesses the exclusive right and standing to prosecute the present action for infringement of the '665 Patent by Defendant.

39.    The application leading to the '665 patent was filed November 16, 2012, which was a continuation of application no. 11/978,781, which issued as United States Patent No. 8,340,994, which was a continuation of application no. 09/565,438 which issued as United States Patent No. 7,308,413.  (Ex. B at cover).  The '665 patent was first assigned to Virtual Creative Artists, LLC. (*Id.*).

40.    The '665 Patent shares the identical specification as the '480 patent and therefore VCA incorporates the background and discussion of the invention in Paragraphs 11-18. Furthermore claim 1 involves a system for generating multimedia content.  The claim requires, among other things, electronically generating a multimedia file from the retrieved electronic media Submissions in accordance with a selected digital format, wherein the identification of the submitter is maintained with each retrieved submission within the multimedia file.  The claim requires electronically transmitting the multimedia file to a plurality of publicly accessible

webservers to be electronically available for viewing on one or more user devices over a public network via a web-browser and. This allows electronically transmit data indicating votes or rating of multimedia content in a much quicker and easier fashion based on specific user criteria. There is nothing abstract about this very particular, unconventional, and non-routine system for the generation of multimedia content as specifically claimed and there is no risk of preempting creating and distribution contention generally, or even within the context of the Internet.

41.    The invention is a highly technical electronic process that cannot be achieved with the human mind and is instead rooted in computer technology, including the steps of:

- "electronically retrieving a plurality of electronic media submissions,"

- "electronically generating a multimedia file from the retrieved electronic media submissions in accordance with a selected digital format,"

- "electronically transmitting the multimedia file to a plurality of publicly accessible webservers to be electronically available for viewing on one or more user devices over a public network via a web-browser," and

- "providing a web-based graphical user interface that enables a user to electronically transmit data indicating a vote or rating for an electronically available multimedia content or an electronic media Submission within a respective electronically available multimedia content."

42.    Each of these subsystems are configured in a very specific (and not generic, unconventional and non-routine manner to offer the novel and non-obvious approach claimed invention. For example, claim 1 requires an "electronic media submissions database," which is a subsystem that receives media submissions from Internet users. This is not a generic database but rather a scalable database that must be able to receive, store, and manage multiple petabytes of multimedia data received from users all over the world. This is one of the many specialized databased required in the claim. In fact, the specification discloses the use of a sophisticated database management system known in the art at the time that was capable of handling data at this

level, Oracle7.  This type of database management system cannot operate on a generic computing system but rather requires specialized hardware and software.

43.    The claim also provides details to explain how each step operates.  For example, the claim requires "electronically retrieving a plurality of electronic media submissions from an electronic media submissions database using an electronic content filter located on one or more data processing apparatus."  Further, "the electronic media submissions database" in this step is further required to "store[] [1] data identifying the submitter and [2] data indicating content for each electronic media submission."  The step further requires and "electronic content filter."  The "filter" also includes a very specific algorithm of "being based at least in part on at least one of the one or more user attributes."

44.    The claims also require an "electronically generating a multimedia file from the retrieved electronic media submissions in accordance with a selected digital format." Manipulation of multimedia data in accordance with a selected digital format is far from generic and was not routine or conventional at the time of the invention.  Further, this step requires that the "electronic media submissions database" "stores data identifying the submitter" and the "the identification of the submitter is maintained with each retrieved submission within the multimedia file."

45.    The claims also require "providing a web-based graphical user interface that enables a user to electronically transmit data indicating a vote or rating for an electronically available multimedia content or an electronic media Submission within a respective electronically available multimedia content," which is a well-defined, specific, and unconventional feature.  By including this additional voting/rating feature, the claims avoid any risk of preempting the creation and distribution of content.

32

46.     The claims also have inventive concepts.  For example, the claim requires that he filtering tool be at a specific location, remote from the end-users, with customizable filtering features specific to each end user.  The "electronic content filter" is located at the server, remote from the end user, and customizable based on user attributes.  The "electron voting" step at the time of the invention was also novel, inventive, and added sufficient inventive contributions to avoid a risk of preempting the creation and distribution of media content.  It is clearly possible to create and distribute media content without every having to include a "voting" subsystem on what components should be included in such media content.

47.     These arguments overcame a patent eligibility rejection under 35 U.S.C. §101 of the claim at issue during the prosecution of the '665 patent before the United States Patent and Trademark Office.

48.     **Direct Infringement.** Upon information and belief, Defendant has been directly infringing claims 1, 3, and 16 of the '665 Patent in Texas, and elsewhere in the United States, by employing a computer-based system using https://www.realtor.com/ ("Accused Instrumentality") (*e.g.,* https://www.realtor.com/).

49.     Move uses a computer-based system for its Accused Instrumentality, to enable user-submitters to create public profiles (such as an Agent profile associated with a real estate agent). Individual users may also post electronic submissions in the form of real estate listings. Each of the public profiles and the real estate listings contain multimedia content including textual content and image content as well as hyperlinks to other pages internal or external to Realtor.com. The real estate listings and associated multimedia content may be shown to other users based on, *inter alia*, user attributes. Move's System employs an electronic release subsystem operatively coupled to the electronic multimedia creator server subsystem, necessarily having one or more

data processing apparatus in order to serve real estate listings with associated textual content and image content to users, configured to make the multimedia content electronically available for viewing on one or more user devices. For example, as shown below, multimedia content associated with the real estate listing is provided on various user devices (*e.g.,* computers or other devices with a web browser or app) in response to a user logging in to the Accused Instrumentality. Move uses function-specific subsystems, for example as discussed below. Move, during the relevant time period, took advantage of multiple cloud server providers for the Accused Instrumentality, as discussed above, as well as scalability within its cloud server providers, employing separate server subsystems for all its meaningfully different functions. Move uses, and has used during the relevant time period, numerous different networks and providers for, *inter alia*, content management systems, web servers, web hosting, data centers, proxy certificates, SSL certificates, traffic analysis, advertising, and tagging, thereby using separate server subsystems for all its meaningfully different functions, such as those indicated below.



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).



(*E.g.*, https://w3techs.com/sites/info/Realtor.com).

50.    The Accused Instrumentality electronically retrieves a plurality of electronic media

submissions from an electronic media submissions database on a non-transitory medium, for

example multimedia content pertaining to posting a real estate listing on the Accused Instrumentality. Individual user-submitters can sign up and maintain a number of real estate listings, which are stored on a user database. Such user database is stored in memory available through the Accused Instrumentality, for example as discussed above. User attributes selected by users pertaining to the real estate listings, contained on the user database, may include *e.g.,* Listing price, number of beds and bathrooms, square feet, geographical location and the like, as shown for example in the examples below. The Accused Instrumentality's retrieval of electronic media with associated photo content and textual content associated with the real estate listing from the electronic media submissions database uses an electronic content filter located on the one or more data processing apparatus. As can be seen below, such electronic content filter as is used by Move is based at least in part on at least one of the one or more user attributes selected by the user (*e.g.,* Listing price, number of beds and bathrooms, square feet, geographical location, property type, listing status and the like), which in turn affect which electronic media submissions, and associated media, appear to the user, as shown and discussed for example below.



(*E.g.*, https://www.youtube.com/watch?v=Obut_hf8zm0).



(*E.g.*, https://www.youtube.com/watch?v=XmzOldRlXm0).



(*E.g.*, https://www.youtube.com/watch?v=XmzOldRlXm0).



(*E.g.*, https://www.youtube.com/watch?v=XmzOldRlXm0).



*How To Setup An Automatic Search on Realtor.com*

(*E.g.,* https://www.youtube.com/watch?v=XmzOldRlXm0).

51.      The Accused Instrumentality includes an electronic media submissions server subsystem, having one or more data processing apparatus and an electronic media submissions database stored on a non-transitory medium in order to process and store received submissions from a plurality of user-submitters, for example content pertaining to their respective electronic media submission (*e.g.,* real estate listing) on the Accused Instrumentality, as well as multimedia content (*e.g.,* photo and/or textual content) to be displayed on a main page or within a real estate listing, as discussed and shown for example in connection with the above discussion. Individual

users may create a profile and submit content pertaining to their user profile and/or Real estate listing. The submissions are provided to the Accused Instrumentality via a submissions electronic interface, *e.g.,* a web-based content portal such as Move's RealSuite dashboard for real estate agents, accessible for example by logging in and selecting an option to upload such content or import content, configured to receive such electronic media, from a plurality of submitters (*e.g.,* real estate agents) over a public network (*e.g.,*, the Internet) and stored, via an uploading process, in said electronic media Listings database for use in distribution to other users of the Accused Instrumentality.



(*E.g.,* https://www.youtube.com/watch?v=TCZ7oS3M-0E).



(*E.g.,* https://www.youtube.com/watch?v=Obut_hf8zm0).

     52.    The electronic media submissions database of the Accused Instrumentality used by Move which stores the submissions further stores data identifying the submitter and data indicating content for each electronic media submission (*e.g.,* a real estate listing). As shown below, data identifying the user-submitter includes, *e.g.,* a name. Data indicating content for each electronic media submission includes photo and/or textual content pertaining to the real estate listing.



(*E.g.,* https://www.youtube.com/watch?v=JDBmQzV5ys8).

53.     The Accused Instrumentality electronically generates multimedia files from the retrieved electronic media submissions, in accordance with a selected digital format (*e.g.,* a digital format compatible with a selected digital format compatible with the particular device such as a computer or smart phone incorporating one or more browsers or apps), and the identification of the submitter is maintained with each retrieved submission within the multimedia file. As shown below, data identifying the user-submitter includes, *e.g.,* a name identifying the user.



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).

54.     The Accused Instrumentality employs an electronic release subsystem operatively coupled to the electronic multimedia creator server subsystem, necessarily having one or more data processing apparatus in order to serve real estate listings with associated photo, and textual content to users, configured to make the multimedia content electronically available for viewing on one or more user devices. Move uses function-specific subsystems, for example as discussed below.



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).



A Quick Realtor com Tutorial

(*E.g.,* https://www.youtube.com/watch?v=JDBmQzV5ys8).

55.    The Accused Instrumentality employs an electronic voting subsystem, necessarily having one or more data processing apparatus in order to track voting or electronic rating, configured to enable a user to electronically vote for or rate an electronically available multimedia content (*e.g.,* a real estate listing), *e.g.,* by the user's choices with respect to a selection of a Heart button. Move uses function-specific subsystems, for example as discussed below.



(*E.g.*, https://www.youtube.com/watch?v=JDBmQzV5ys8).



(*E.g.*, https://www.youtube.com/watch?v=Obut_hf8zm0).

      56.    The Accused Instrumentality enables the electronic media submission to include both image and text associated with the submission. As can be shown below, the images pertain to photographs of the real estate listing and text may include an address or a description associated with the real estate listing as inputted by the user-submitter.



(*E.g.,* https://www.youtube.com/watch?v=Obut_hf8zm0).

57.    The Accused Instrumentality enables the electronic content filter to include criteria defined by keywords. As can be shown below, the user is able to conduct a text search outside of predetermined criteria. The text search represents user-inputted keywords which necessarily narrows the search to media submissions' text.



**How To Setup An Automatic Search on Realtor.com**

David Pere
40.5K subscribers

Subscribe

24

Share    Save

1,952 views  Feb 27, 2021

(*E.g.*, https://www.youtube.com/watch?v=XmzOldRlXm0).

58.    Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '665 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

59.    To the extent marking is required, VCA has complied with all marking requirements.

# V.  **JURY DEMAND**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

# VI.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.    Judgment that one or more claims of United States Patent No. 9,501,480 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

b.    Judgment that one or more claims of United States Patent No. 9,477,665 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

c.    Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

d.    That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e.    That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.


January 3, 2025                              DIRECTION IP LAW

                                              */s/ David R. Bennett*
                                              David R. Bennett
                                              (*Admitted to the U.S. Dist. Ct. for the W.D. Texas*)
                                              Direction IP Law
                                              P.O. Box 14184
                                              Chicago, IL 60614-0184
                                              (312) 291-1667
                                              dbennett@directionip.com

                                              *Attorney for Plaintiff*
                                              *Virtual Creative Artists, LLC*